Vernon PATRICK, Plaintiff-Appellant,

v.

Eugene LeFEVRE, Superintendent of Clinton Correctional Facility; Rev. Doctor Earl B. Moore, Chaplain; and Thomas A. Coughlin, III, Commissioner of New York State Department of Correctional Services, Defendants-Appellees.

No. 137, Docket 83–2382.

United States Court of Appeals, Second Circuit.

Argued Aug. 29, 1984.

Decided Sept. 19, 1984.

As Amended Sept. 25, 1984.

Rosalind S. Lichter, Meyers Tersigni Kaufman Feldman & Gray, New York City, for plaintiff-appellant.

Nancy A. Spiegel, Asst. Atty. Gen., N.Y. State, Albany, N.Y. (Robert Abrams, Atty. Gen. of N.Y., William J. Kogan, Asst. Sol. Gen. of N.Y., Albany, N.Y., of counsel), for defendants-appellees.

Before KAUFMAN, MESKILL and PIERCE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge.

From time immemorial, our republic has prided itself on its unwavering commitment to spiritual liberty. Unpopular and unorthodox beliefs forbidden elsewhere have consistently found tolerance and acceptance on our shores. An abiding respect for the unfettered expression of conscience has served as the animating force behind the free exercise clause's coverage. Mindful of these precepts, the judiciary has steadfastly refused to become the arbiter of scriptural interpretation.

But with the advent of the theological revolution, the already acute tension between spiritual liberty and secular intervention has been exacerbated. Religious impulses, once ensconced in a theocentric, transcendental mode, now extend to the imminence of meaning in the natural order. This implosion of conscience tests the resiliency of first amendment doctrine, and places demands of inordinate difficulty on the judiciary as it strives to resolve conflicts with dispatch and fairness. Where claims of personal faith clash with expediency, courts must be particularly circumspect. Indeed, an efficient system callous to the need for vindication of precious liberties denigrates the labors of our founding fathers.

We recognize the judiciary's limited competence in addressing issues that originate in the spiritual realm. Nevertheless, we shall proceed carefully to outline the relevant facts necessary for resolving the instant confrontation between claims of conscience and the pragmatic needs of the judiciary.

## I.

On June 10, 11, and 23, 1981, Vernon Patrick, a prisoner incarcerated at the Clinton Correctional Facility,[1] petitioned the Prison Superintendent, the Prison Chaplain and the Commissioner of the New York State Department of Corrections for recognition of the Five Percenters as a valid religious group within the prison. Patrick sought "permission to practice, exercise, promulgate, and gather together with others for the purpose of worshipping his faith of Islam, as a Five Percenter." All three requests for religious recognition were rejected. The reasons proffered to support the denial were identical—"The Five Percenter Nation of Islam is not recognized as a religious group."

We believe a thumbnail sketch of the Five Percenter creed, as gleaned from the record assembled by the trial court, is instructive in understanding the nub of the instant action. The Five Percent Nation of Islam, currently headquartered in New York City, was founded by Clarence 13X in the early 1960s and was intended to be a free-flowing, spiritual tributary of the Nation of Islam. As its numerical nomenclature suggests, the Five Percenter faith can be traced to the ancient papyrus scrolls that addressed the notion of creation in mathematical and symbolic terms. Indeed, the Five Percenter creed continues to conceive of its ideals by reference to the realm of mathematics.

Patrick described the animating goal of the Five Percent sect as the transmission of knowledge and spiritual guidance to the eighty-five percent of the population who are oppressed by the remaining ten percent. The eighty-five percenters are the "uncivilized men, women and children of the Earth that know not their true self"; the ten percenters are the rich subjugators who exert control via spiritual obfuscation. Notwithstanding the Five Percenter's expression of numerical hegemony, Patrick maintains that the sustaining ethos of the sect is one of spiritual enlightenment.

The texts upon which a Five Percenter relies for instruction in his daily practice represent a mixture of the common and the obscure—the Bible, Elijah Mohammed's Body of Lessons and Plus Lessons, and the Egyptian Book of the Dead. In addition, Five Percenters recognize the existence of a Superior Being—Allah. Because Five Percenters believe their status is commensurate with that of the Superior Being, worship of Allah is tantamount to worship of oneself. Moreover, Five Percenters maintain that structured channels of belief are superfluous to, and indeed cannot coexist with a creed dedicated to the expression of one's individual conscience. Instead, the seeds of spiritual communication are nurtured from within. Guided by this precept, Clarence 13X created a faith marked by informality; he saw no need for a fixed place of worship where adherents could congregate regularly to exchange their ideas.

1. Patrick has subsequently been transferred to the Attica Correctional Facility.

Prompted by the prison officials' refusals to recognize the Five Percenter creed, the saga of Vernon Patrick was begun anew in the United States District Court for the Northern District of New York. There, in February of 1982, Patrick filed suit, *pro se*, pursuant to 42 U.S.C. § 1983, alleging the prison authorities violated his right to exercise freely his religious beliefs as guaranteed by the first amendment to the United States Constitution. Patrick sought a declaratory judgment that the prison officials' actions and policies contravened the free exercise clause of the first amendment, and requested injunctive relief ordering the prison authorities to permit Patrick to practice his religion, and compensatory and punitive damages.[2]

In February 1983, Patrick, again appearing without counsel, was deposed by Daniel Saxe, an Assistant Attorney General. In explaining the purpose of the deposition, Saxe assured Patrick that, "This is not a trial. All I am seeking to do is gain information on what the lawsuit is about." During the course of this deposition, Patrick stated he had been a Five Percent adherent since 1965 but did not officially acknowledge his affiliation with the Five Percenters until 1981 for fear of reprisals by prison authorities. He also expatiated upon the nature of his beliefs. At one point, Patrick described the Five Percenter faith as a "way of life," but throughout the remainder of the deposition Patrick couched his discussion in spiritual terms, referring to his "worship of Allah," "recognition of a God," and "study of the Bible's teachings."

On September 15, 1983, the prison officials moved for summary judgment pursuant to Fed.R.Civ.P. 56(c), alleging that no genuine issue of material fact existed regarding either the sincerity of Patrick's belief or the nature of that belief. Ten days later, Patrick submitted a voluminous handwritten response in opposition to the prison officials' motion, in which he propounded by reference to objective, as well as subjective, indicia that his beliefs in the Five Percenter faith were sincerely held and religious in nature.[3] On November 10, 1983, Judge Foley granted the prison officials' motion for summary judgment and dismissed Patrick's complaint. Relying on Patrick's short-lived official affiliation with the Five Percent faith and a narrow definition of "religious belief" promulgated by the Third Circuit,[4] Judge Foley held that Patrick "has not made a clear showing" of the sincerity of his belief and "has failed to establish successfully that his beliefs and practices are religious in nature."

Although we might not have any quarrel with this conclusion had it been reached after a trial, we do hold that it was improper to grant the summary judgment motion, where resolution of the dispositive issues squarely implicated the claimant's state of mind.

## II.

Essential to an understanding of the propriety of the district court's grant of summary judgment is an appreciation of

---

2. Patrick's subsequent transfer to the Attica Correctional Facility did not render this case moot. As we have stated, "the hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). By seeking compensatory damages of $12,500 and punitive damages of $23,000 from each of the named prison officials, Patrick preserves a "legally cognizable interest in the outcome," allowing the relief sought to be granted. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

3. To establish the sincerity of his belief, Patrick reiterated his dedication to the Five Percent faith, explained that he only recently acknowledged his affiliation because he feared physical abuse by the prison authorities and noted that his daily practices underscore the sincerity of his beliefs. Regarding the religious nature of his belief, Patrick asserted that he perceived the Five Percent creed to be a religion and that his practice entails worshipping a God and studying the Bible.

4. *See Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir.1981) (adopting narrow definition of "religious belief").

the limited function of the judiciary in determining whether beliefs are to be accorded first amendment protection. This limited inquiry reflects our society's abiding acceptance and tolerance of the unorthodox belief. Indeed, the blessings of our democracy are ensconced in the first amendment's unflinching pledge to allow our citizenry to explore diverse religious beliefs in accordance with the dictates of their conscience. This freedom to believe as one chooses without secular interference evinces an abiding confidence in the benefits attendant to a truly pluralistic state. The freedom to exercise religious beliefs cannot be made contingent on the objective truth of such beliefs. *See United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944).

█ It cannot be gainsaid that the judiciary is singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs. Mindful of this profound limitation, our competence properly extends to determining "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733 (1965). This two-pronged command expressly delineates the contours of our inquiry [5]—beliefs must be sincerely held and religious in nature to be accorded first amendment protection.

### A.

Sincerity analysis seeks to determine an adherent's good faith in the expression of his religious belief. *See International Society for Krishna Consciousness v. Barber,* 650 F.2d 430, 441 (2d Cir.1981). This test provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud. The latter variety, of course, must be subject to governmental invasion, lest

our society abjure from distinguishing between the incantation of "sincerely held religious beliefs" as a talisman for self-indulgence or material gain and those beliefs genuinely dictated by conscience.

Sincerity analysis is exceedingly amorphous, requiring the factfinder to delve into the claimant's most veiled motivations and vigilantly separate the issue of sincerity from the factfinder's perception of the religious nature of the claimant's beliefs. This need to dissever is most acute where unorthodox beliefs are implicated. There, the factfinder's temptation to merge sincerity and verity is as great as the need to guard against this conjugation. Accordingly, assessing a claimant's sincerity of belief demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross-examination. A more cursory evaluation raises the spectre that the sincerity issue was decided by reference to the factfinder's perception of what a religion should resemble.

### B.

█ Properly cognizant of the judiciary's incapacity to judge the religious nature of an adherent's beliefs, courts have jettisoned the objective, content-based approach previously employed to define religious belief, *see Davis v. Beason,* 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637 (1890); *Reynolds v. United States,* 98 U.S. 145, 8 Otto 145, 25 L.Ed. 244 (1879), in favor of a more subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system. *See Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 713–15, 101 S.Ct. 1425, 1429–31, 67 L.Ed.2d 624 (1981); *United States v. Seeger, supra; United States v. Ballard, supra; United States v. Sun Myung Moon,* 718 F.2d 1210, 1226–27 (2d Cir.1983); *International Society for Krishna Consciousness v. Barber,*

---

**5.** We need not address the question whether the state's penal interests outweigh the proffered first amendment claim. *See Bell v. Wolfish,* 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1877–78, 60

L.Ed.2d 447 (1979); *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

*supra,* 650 F.2d at 442–43; *United States v. Kauten,* 133 F.2d 703 (2d Cir.1943). By limiting the factfinder's inquiry to a determination whether "the beliefs professed ... are, in [the claimant's] own scheme of things, religious," *Seeger, supra,* 380 U.S. at 185, 85 S.Ct. at 863, it follows concomitantly that the claim of the adherent "that his belief is an essential part of a religious faith must be given great weight." *Seeger, supra,* 380 U.S. at 184, 85 S.Ct. at 863; *see also* P. Tillich, *Dynamics of Faith* 1–2 (1958). Impulses prompted by dictates of conscience as well as those engendered by divine commands are therefore safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature.

We recently cited with approval the definition of religion espoused by the eminent American philosopher William James: "the feelings, acts, and experiences of individual men in their solitude, so far as they apprehend themselves to stand in relation to whatever they may consider the divine." *See United States v. Moon, supra,* 718 F.2d at 1227 (quoting W. James, *The Varieties of Religious Experience* 31 (1910)). Moreover, this expansive conception of religious belief is consonant with the vision of the free exercise clause as a vehicle promoting the inviolability of individual conscience. *See* L. Tribe, *American Constitutional Law* § 14–3, at 818 (1978); Note, "Toward a Constitutional Definition of Religion," 91 Harv.L.Rev. 1056 (1978).

Although we do not reach the issue whether an adherent of the Five Percenter faith would be able to satisfy the *Seeger* threshold requirements that trigger first amendment protection, we do note such a determination would require the factfinder to delve into the internal operations of the claimant's mind, and in turn assess the sincerity of the held beliefs and the place occupied by such beliefs in the claimant's life.

It is against this backdrop that we turn to the precise issue presented on appeal—whether the district judge's grant of summary judgment was proper where the claimant's state of mind was squarely in issue.

## III.

Balancing the right to a full and fair trial with the need to dispose expeditiously of cases that do not involve genuine issues of fact presents a Faustian conflict, often played out to denouement in our courts of justice. At the heart of this dramatic struggle between competing forces is the summary judgment device. Its purpose is to enable a court to determine whether the "curtain" should rise and the trial proceed.

■ On a motion for summary judgment, we are mindful of the maxim that "the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce and Industry Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). Moreover, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *see Heyman v. Commerce and Industry Co., supra,* 524 F.2d at 1320, with the burden on the moving party to demonstrate the absence of any material issue genuinely in dispute, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Requiring the movant to overcome this stringent presumption and meet this burden of proof is clearly appropriate, given the drastic effect of granting summary judgment—the litigant is precluded from presenting his case to a jury. *See Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *American International Group, Inc. v. London American International Corp., Ltd.,* 664 F.2d 348, 351 (2d Cir.1981); *Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir.1972).

■ We agree with Patrick that the district judge departed from these directives and improperly shifted the burden to Patrick to prove the existence of material facts warranting a trial. Indeed, Judge Foley stated that Patrick "has not made a clear

showing" of his sincerity of belief and "has failed to establish successfully that his beliefs and practices are religious in nature."

Judge Foley's error can be traced to his misapprehension of the interplay between Rule 56(c) [6] and Rule 56(e),[7] and his initial finding that the prison officials met their Rule 56(c) burden by establishing the absence of genuine issues of material fact. This erroneous finding triggered the application of Rule 56(e). Interpreting that provision, Judge Foley concluded that Patrick had a burden to set forth facts establishing the existence of genuine triable issues. Ultimately, the court held that Patrick failed to meet that burden, thereby warranting the grant of summary judgment. We shall now attempt to unravel this Gordian knot.

■ This Court has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable, *see Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 10 (2d Cir.1983); *Landmark Land Co., Inc. v. Sprague*, 701 F.2d 1065, 1070 (2d Cir.1983); *American International Group, Inc. v. London American International Co., Ltd., supra*, 664 F.2d at 353 (2d Cir.1981); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980); *Empire Electronics Co., Inc. v. United States*, 311 F.2d 175, 180 (2d Cir. 1962); *Arnstein v. Porter*, 154 F.2d 464, 471 (2d Cir.1946). The need for a full exposition of facts is profound under such circumstances since determining a man's state of mind is "an awesome problem," capable of resolution only by reference to a panoply of subjective factors. *See Sittler v. United States*, 316 F.2d 312, 325 (2d Cir.1963) (Kaufman, J., concurring). Fur-

thermore, a sojourn into an adherent's mind-set will inevitably trigger myriad factual inferences, as to which reasonable persons might differ in their resolution. Traditionally, this function has been entrusted to the jury.

■ When examined in this light, Judge Foley's finding that the prison officials met their Rule 56(c) burden is clearly incorrect. In determining whether Patrick's beliefs are to be accorded first amendment protection, the factfinder must delve into the internal workings of Patrick's mind and assess the credibility of his claims. In so doing, subjective issues of sincerity of belief and the perceived nature of that belief must be confronted squarely; considerations of intent and motive are implicated peripherally. "If there were ever a clearer example of a question of fact, rather than law, I can think of none." *Sittler v. United States, supra*, 316 F.2d at 325 (Kaufman, J., concurring) (state of mind). As we have noted, these factual issues cannot be resolved without the benefit of observing Patrick's demeanor during direct and cross-examination to facilitate a credibility evaluation.

■ Our conclusion is not altered by the fact that the prison officials, in support of their summary judgment motion, proffered evidentiary matter indicating the short-lived nature of Patrick's affiliation with the Five Percenters, the inconsistencies revealed in Patrick's deposition regarding the total number of avowed Five Percenter adherents at Clinton, the Five Percenters' disdain for formal accoutrements of religious worship, and the propinquity of the perception of the Five Percent faith as a "way of life" and as a religious creed. Patrick's sincerity of belief and his perception of that belief are material facts that

---

**6.** Rule 56(c) states, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

**7.** Rule 56(e) states, in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him. (emphasis added)

remain squarely in issue, particularly in light of the requirement that all ambiguities must be construed in Patrick's favor. Indeed, the submission of this circumstantial evidence challenging Patrick's credibility yields an effect contrary to the one intended; it only accentuates the factual conflicts present in this suit and punctuates the need for a full factual exposition at which these disputes can ultimately be resolved. As we have noted, summary judgment is perforce improper where conflicting evidence is adduced. *See Heyman v. Commerce and Industry Co., supra,* 524 F.2d at 1320. Accordingly, Judge Foley's holding that the prison officials successfully established the absence of triable issues of fact in conformity with the dictates of Rule 56(c) was plainly improper.

Moreover, this erroneous finding rendered inapposite Judge Foley's subsequent conclusion that Patrick had failed to set forth facts, in accordance with Rule 56(e), demonstrating the existence of triable issues regarding his sincerity of belief and the nature of that belief.[8] "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Advisory Committee Notes to Fed.R.Civ.P. 56(e) (1963 Amendment); *see Mourning v. Family Publications Services, Inc.,* 411 U.S. 356, 382–83, 93 S.Ct. 1652, 1667–68, 36 L.Ed.2d 318 (1973) (Douglas, J., dissenting in part); *Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 159, 90 S.Ct. at 1609; Kaplan, "Amendments of the Federal Rules of Procedure, 1961–1963 (II)," 77 Harv.L.Rev. 801, 827 (1964).

The district court improperly crossed the line between identifying genuinely disputed issues—its proper function on a summary judgment motion—and prematurely resolving those issues. *See Schering Corp. v. Home Insurance Co., supra,* 712 F.2d at 9; *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor,"* 691 F.2d 603, 606 (2d Cir.1982). Although this line may be chimerical, a litigant would be deprived of his day in court if we did not adhere to the letter of summary judgment law.

Patrick's *pro se* status, although it is not dispositive of this appeal, is yet another fact militating against the granting of summary judgment. This Court has long evinced a sensitivity toward the plight of the uncounselled prisoner attempting to navigate the technicality-laden road to the courthouse. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983); *Moorish Science Temple of America, Inc. v. Smith,* 693 F.2d 987, 990 (2d Cir.1982); *Aziz v. LeFevre,* 642 F.2d 1109, 1110 (2d Cir.1981); *Frankos v. LaVallee,* 535 F.2d 1346, 1347 (2d Cir.); *cert. denied,* 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976); *People of the United States ex rel. Schuster v. Herold,* 440 F.2d 1334, 1335 (2d Cir.1971); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

Accordingly, we reverse the district court's grant of summary judgment and remand for further proceedings. Our holding, of course, reflects no opinion on the merits of the case.

---

**8.** Even if we were to assume *arguendo* that the prison officials' affidavits established the absence of any genuine triable issues as required by Rule 56(c), we nevertheless find that Patrick has met his Rule 56(e) burden by submitting a response setting forth specific facts demonstrating genuine issues for trial. Regarding his sincerity of belief, Patrick proclaimed his sincere and abiding devotion to the Five Percent creed, noted that his daily practices manifest this sincerity, and explained that fear of reprisals by prison authorities prompted his failure to officially acknowledge his affiliation with the Five Percenters until 1981. To substantiate the claim that his beliefs are religious in nature, Patrick offered a detailed account of his perception of the Five Percenter faith as religious, specifically adverting to his belief in a "Supreme Being" and his instruction from the "Holy Bible." By proffering evidence, the verity of which hinges on the credibility of Patrick's testimony at trial, Patrick has set forth facts raising genuine triable issues in satisfaction of his Rule 56(e) burden.