293 F.3d 570
 FIFTH AVENUE PRESBYTERIAN CHURCH, Gladys Escalera, Nicholas Nesron, William P. Rasmussen, Donald J. Robison, Veronica A. Lester, Alfred McKenzie, Alfred Brown, Dennis Paige, Peabody Dennis, Stefan Pary and Margaret Shafer, Plaintiffs-Appellees-Cross-Appellants,
v.
The CITY OF NEW YORK, Bernard Kerik and Rudolph Giuliani, Defendants-Appellants-Cross-Appellees.
 Docket No. 02-7073.
 United States Court of Appeals, Second Circuit.
 Argued: May 29, 2002.
 Decided: June 12, 2002.
 
 Carter G. Phillips, Sidley Austin Brown & Wood L.L.P., Washington, DC (James D. Johnson, Gene C. Schaerr, Edward McNicholas, James C. Stansel, Patrick F. Linehan on the brief), for Plaintiffs-Appellees-Cross-Appellants.
 Jonathan R. Nelson, New York, NY, on the brief for Plaintiffs-Appellees-Cross-Appellants.
 Katherine Pringle, Friedman, Kaplan, Seiler & Adelman, New York, NY, on the brief for Plaintiffs-Appellees-Cross-Appellants.
 Mordecai Newman, for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, N.Y. (Leonard Koerner, Larry A. Sonnenshein, Rachel Goldman on the brief), for Defendants-Appellants-Cross-Appellees.
 Timothy K. Armstrong and Candace N. Beck, Howrey Simon Arnold & White L.L.P., Washington, DC (Maria Foscarinis, National Law Center on Homelessness & Poverty, of counsel), on the brief for amicus curiae The National Law Center on Homelessness & Poverty.
 Arnold S. Cohen, Warren B. Scharf and Jonathan L. Hafetz, New York, NY, on the brief for amicus curiae The Partnership for the Homeless.
 Kathryn Tabner, Shearman & Sterling, New York, N.Y. (Douglas H. Lasdon, Urban Justice Center, of counsel), on the brief for amicus curiae Urban Justice Center.
 Eric W. Treene, The Becket Fund for Religious Liberty, Washington, DC (Anthony R. Picarello, Jr., Roman P. Storzer, Derek Gaubatz, of counsel), on the brief for amici curiae The Baptist Joint Committee on Public Affairs; The Becket Fund for Religious Liberty; The Christian Legal Society; Clifton Kirkpatrick As Stated Clerk of the General Assembly of the Presbyterian Church (USA); The Council of Churches of the City of New York; The General Conference of Seventh-Day Adventists; The Interfaith Assembly on Homelessness and Housing; The Queens Federation of Churches; and Rutgers Presbyterian Church.
 Before STRAUB, SOTOMAYOR, Circuit Judges, and GOLDBERG, Judge.*
 STRAUB, Circuit Judge.
 
 
 1
 Defendants-Appellants the City of New York, Bernard Kerik and Rudolph Giuliani (collectively "the City") appeal from an opinion and order of the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge) entering a preliminary injunction in favor of Plaintiffs-Appellees Fifth Avenue Presbyterian Church ("Presbyterian" or "the Church") and ten homeless persons. Finding that Presbyterian had demonstrated a likelihood of success on the merits of its claim under the Free Exercise Clause of the First Amendment, the District Court entered a preliminary injunction preventing the City from dispersing homeless individuals sleeping by invitation on the Church's landings and steps. We affirm.
 
 BACKGROUND
 
 2
 Presbyterian is located at the corner of Fifth Avenue and 55th Street in Manhattan. For several years, homeless persons have chosen to sleep on the Church's outdoor property. In February 1999, the Church officially designated two areas on its outdoor property upon which homeless persons are permitted to sleep at night. The first of these areas encompasses the landings at the tops of the staircases leading into the Church's main sanctuary on Fifth Avenue and into its 55th Street entrance. The landings are contained within arched entryways and are recessed approximately five to ten feet from the sidewalk and raised approximately six feet above the sidewalk. The second designated area is a strip of land adjacent to the Church's southern wall that extends approximately five feet to the public sidewalk.
 
 
 3
 The Church views its outdoor space as a sanctuary for the service-resistant homeless who prefer not to sleep in shelters. Homeless persons are welcome on the Church's outdoor property between 8:00 p.m. and 7:00 a.m. They are not permitted to set up their sleeping area or lie down until 9:00 p.m. Persons taking advantage of the Church's invitation to sleep on its outdoor property are given a list of rules, which includes instructions to clean up after themselves and a prohibition on begging, loud music, disruptive behavior, and foul language.
 
 
 4
 In November 2001, the City notified Presbyterian that it would no longer permit the homeless to sleep on the Church's outdoor property. Thereafter, on three occasions in early December 2001, city police removed the homeless from the Church's property during the night. Presbyterian claims that the police threatened the homeless with arrest if they refused to leave.
 
 
 5
 On December 17, 2001, Presbyterian brought suit under 42 U.S.C. § 1983, the First Amendment, the common law of trespass, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, et. seq., and for deprivation of due process and violation of Article 1, Section 3 of the New York State Constitution. Presbyterian sought injunctive relief preventing the City from entering onto Church property and dispersing the homeless. Focusing primarily on the Church's cause of action under the Free Exercise Clause of the First Amendment, the City argued that allowing the homeless to sleep on the sidewalk and on Church grounds does not constitute protected religious activity, and that the Church had violated applicable laws or regulations in four ways: (1) operating a shelter without a license; (2) creation of a public nuisance; (3) allowing persons to sleep on a sidewalk that is subject to City regulation; and (4) allowing the use of boxes, tents, and similar materials on the sidewalk in violation of City codes.
 
 
 6
 Following a hearing, the District Court issued a memorandum and order granting in part the Church's request for a preliminary injunction. In ruling on the Church's application, the District Court concluded that allowing homeless persons to sleep on the Church's private property constitutes protected religious activity because doing so enables the Church to interact with and assist the homeless in bettering their lives. The court rejected the City's arguments that the Church is operating a de facto shelter, and that the presence of the homeless amounts to a public nuisance. The court agreed with the City that it is permitted to regulate the presence of sleeping persons, as well as cardboard shelters and tents, on the Church's land adjacent to the sidewalk on 55th Street. Accordingly, the District Court entered a preliminary injunction prohibiting the City from interfering with homeless persons who are sleeping on the Church steps and landings above sidewalk level. The court denied the application with regard to those sleeping on Church property adjacent to the public sidewalk.[1]
 
 DISCUSSION
 
 7
 On appeal, the City argues that the District Court erred in holding that the Church's outdoor sanctuary constitutes protected religious activity because allowing the homeless to sleep outdoors is an inadequate provision of shelter "in a civilized society." The City also renews its argument that the Church is operating a de facto shelter without valid registration and without adequate services and facilities. The City argues for the first time on appeal that it has the power to enforce minimum standards of habitability for unregulated shelters, and that the Church is in violation of local Zoning Resolution Section 12-10. The City also asserts for the first time that it has a compelling interest in dispersing the homeless from Presbyterian's grounds.
 
 
 8
 A district court's grant of a preliminary injunction is reviewed for abuse of discretion. See Latino Officers Ass'n v. City of New York, 196 F.3d 458, 462 (2d Cir.1999), cert. denied, 528 U.S. 1159, 120 S.Ct. 1170, 145 L.Ed.2d 1079 (2000). In order to merit preliminary injunctive relief against "government action taken in the public interest pursuant to a statutory or regulatory scheme," a plaintiff must show "irreparable harm in the absence of an injunction and a likelihood of success on the merits." Id. (internal quotation marks omitted).[2] "Violations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction." Id. (internal quotation marks omitted).
 
 
 9
 "The Free Exercise Clause of the First Amendment, which has been applied to the states through the Fourteenth Amendment, provides that `Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Government enforcement of laws or policies that substantially burden the exercise of sincerely held religious beliefs is subject to strict scrutiny. See id. at 546, 113 S.Ct. 2217; see also Sherbert v. Verner, 374 U.S. 398, 402-03, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). "To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." Church of Lukumi Babalu Aye, 508 U.S. at 546, 113 S.Ct. 2217 (internal quotation marks omitted). Where the government seeks to enforce a law that is neutral and of general applicability, however, then it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices. See id. at 531, 113 S.Ct. 2217; Employment Div., Dep't of Human Res. of Oreg. v. Smith, 494 U.S. 872, 878-79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).
 
 
 10
 Because "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires," courts are not permitted to inquire into the centrality of a professed belief to the adherent's religion or to question its validity in determining whether a religious practice exists. Smith, 494 U.S. at 886-87, 110 S.Ct. 1595. As such, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Thomas v. Review Bd. of the Ind. Emp. Sec. Div., 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); see also Patrick v. LeFevre, 745 F.2d 153, 156-57 (2d Cir.1984). An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are "sincerely held" and in the individual's "own scheme of things, religious." LeFevre, 745 F.2d at 157 (internal quotation marks omitted); see also Thomas, 450 U.S. at 716, 101 S.Ct. 1425.
 
 
 11
 Although the City concedes that the Church's provision of services to the homeless falls within the ambit of protected activity under the Free Exercise Clause, the City argues that allowing homeless persons to sleep outside is not a meaningful provision of "services" and does not constitute legitimate religious conduct. Presbyterian responds that its outdoor sanctuary forms an integral part of its religious mission and that the police's removal of the homeless interferes with the Church's ministry and homeless outreach program. In an affidavit submitted in support of the application for injunctive relief, the Church's homeless liaison states that the Church is "commanded by scripture to care for the least, the lost, and the lonely of this world" and in ministering to the homeless, the Church is "giving the love of God.... There is perhaps no higher act of worship for a Christian."
 
 
 12
 We agree with the District Court that on the present record, the Church has demonstrated a likelihood of success in establishing that its provision of outdoor sleeping space for the homeless effectuates a sincerely held religious belief and therefore is protected under the Free Exercise Clause. Cf. Stuart Circle Parish v. Bd. of Zoning Appeals of the City of Richmond, 946 F.Supp. 1225, 1236 (E.D.Va.1996); Western Presbyterian Church v. Bd. of Zoning Adjustment of the District of Columbia, 862 F.Supp. 538, 544-46 (D.D.C. 1994). Further, we assume, without deciding, that the City's actions in dispersing the homeless substantially burden the Church's protected religious activity, a proposition with which the City has not argued. Accordingly, absent a demonstration that a neutral law of general applicability justifies the City's actions, the City must assert a compelling interest in preventing the homeless from sleeping on Church property that would suffice to overcome the Church's free exercise rights, and that the means it has adopted to fulfill that interest are narrowly tailored. See Church of Lukumi Babalu Aye, 508 U.S. at 546, 113 S.Ct. 2217; Wisconsin v. Yoder, 406 U.S. 205, 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).
 
 
 13
 The City points to several laws or policies that it claims support its actions. First, the City argues that Presbyterian is operating a homeless shelter without a license and in contravention of state regulations. Pursuant to 18 N.Y.C.R.R. §§ 485.1 & 491.1, the operator of a shelter for adults must obtain certification from the New York State Department of Social Services and comply with its applicable regulations. A shelter is defined as "an adult care facility established and operated for the purpose of providing temporary residential care, room, board, supervision, information and referral...." Id. § 491.2 (emphasis added). We agree with the District Court that an invitation to the homeless to sleep on outdoor property does not fall within the ambit of these regulations, which contemplate an indoor facility and the provision of comprehensive social services for the homeless. See, e.g., id. § 491.10 (setting forth detailed requirements for shelters pertaining to building and fire codes, furniture, amenities and housekeeping).
 
 
 14
 As an alternative justification for its actions, the City argues that it is empowered to enforce minimum standards of habitability for privately-run shelters in the absence of applicable regulations. In support of this proposition, the City cites the New York Court of Appeals' decision in McCain v. Koch, 70 N.Y.2d 109, 517 N.Y.S.2d 918, 511 N.E.2d 62 (1987). McCain held that the New York Supreme Court has the equitable power to require a minimum standard of care for city-run emergency housing so long as the standard of care does not conflict with applicable state or city regulations. McCain's holding was premised on the principle that once the City has undertaken to provide emergency housing, it has a duty to ensure certain minimum standards of habitability. Id. at 119-20, 517 N.Y.S.2d 918, 511 N.E.2d 62. We decline to extend McCain's holding beyond the context of government-administered housing on these facts. Moreover, McCain addressed a court's equitable power to issue an injunction requiring the City to provide particular amenities; it did not address the City's power to devise and enforce equitable standards of its own making. Nor did the Court of Appeals in McCain express any opinion as to the substance of the injunction in that case — i.e., whether the specific requirements in that injunction were in fact the minimum acceptable standards of habitability for a shelter.
 
 
 15
 The City argues that its power to enforce equitable standards of care for homeless shelters derives from its ability to enforce public nuisance laws. The District Court ruled below that the City had not established the existence of a nuisance, and the City does not challenge that particular holding on appeal. Therefore, we need not consider this argument. The City also claims, in its reply brief, that it has a "policy of regarding the provision of subminimal shelter as a nuisance." Not only is this argument untimely raised, see Thomas v. Roach, 165 F.3d 137, 145-46 (2d Cir.1999), but the City has not adequately demonstrated the existence or general applicability of such a policy, or that it applies to the Church's activities.
 
 
 16
 Finally, the City argues for the first time on appeal that the Church is in violation of New York City Zoning Resolution Section 12-10 because its outdoor sanctuary is not a permissible "accessory" use of its property. Because this argument was not raised below and refusing to consider it will not result in "manifest injustice" in light of the posture of the case, and because adjudication of zoning disputes over accessory uses entails an inherently factual inquiry, see New York Botanical Garden v. Bd. of Standards & Appeals, 91 N.Y.2d 413, 420, 671 N.Y.S.2d 423, 694 N.E.2d 424 (1998), we decline to consider the City's argument here. See Coogan v. Smyers, 134 F.3d 479, 486-87 (2d Cir.1998). Nor, therefore, need we express any opinion on the plaintiffs' argument, also raised for the first time on appeal, that the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, et. seq., subjects the City's application of its Zoning Resolution to strict scrutiny.
 
 
 17
 Thus, at the present time, the City has not sufficiently shown the existence of a relevant law or policy that is neutral and of general applicability, and that would therefore justify its actions in dispersing the homeless from the Church's landings and steps. For the first time in its reply brief, the City argues that its dispersal of the homeless from Presbyterian's property is justified by a compelling state governmental interest, namely, "preventing the Church from providing inadequate shelter nightly and encouraging homeless persons to avoid a safer, more civilized alternative." Although arguments raised for the first time in a reply brief need not be considered, see Thomas, 165 F.3d at 145-46, we note that the homeless who take advantage of the Church's offer, ten of whom are plaintiffs in this action, do so voluntarily. Moreover, common sense, in addition to evidence put forth by the homeless plaintiffs, suggests that the majority of these homeless will not go to shelters if the City is permitted to disperse them; rather, they will find another place on the street upon which to sleep. Thus, it is doubtful that the "ends" support the City's "means," nor has the City attempted to show that police dispersal in the middle of the night is the least restrictive means of accomplishing its goal of ensuring that the homeless have appropriate sleeping quarters. See Yoder, 406 U.S. at 215, 92 S.Ct. 1526.
 
 CONCLUSION
 
 18
 For the foregoing reasons, we find that the District Court did not abuse its discretion in concluding that Presbyterian has demonstrated a likelihood of success on the merits of its free exercise claim. The opinion and order of the District Court entering a preliminary injunction in favor of Presbyterian is hereby AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation
 
 
 [1]
 The Church originally filed a cross-appeal challenging the District Court's ruling with respect to the land adjacent to the sidewalk, but later withdrew that appeal
 
 
 [2]
 We reject the City's contention that the plaintiffs were required to meet the "clear or substantial likelihood of success" standard applicable to mandatory injunctionsSee Beal v. Stern, 184 F.3d 117, 122-23 (2d Cir. 1999). The injunction appealed from does nothing more than preserve the status quo pending trial, and therefore no heightened showing was required.