**MERKOS L'INYONEI CHINUCH, INC., Plaintiff–Appellee,**

v.

**OTSAR SIFREI LUBAVITCH, INC., Defendant–Appellant.**

**Docket No. 02–7465.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 6, 2002.

Decided: Nov. 25, 2002.

Ronald W. Meister (Arthur J. Greenbaum, Robert W. Clarida, on the brief), Cowan, Liebowitz & Latman, P.C., New York, NY, on behalf of Plaintiff–Appellee Merkos L'Inyonei Chinuch, Inc.

Jacob Laufer, Laufer & Associates, Brooklyn, NY, on behalf of Defendant–Appellant Otsar Sifrei Lubavitch, Inc.

Before OAKES, MINER, and KATZMANN, Circuit Judges.

PER CURIAM.

Defendant Otsar Sifrei Lubavitch, Inc. ("Otsar") appeals the District Court's grant of a preliminary injunction to Merkos L'Inyonei Chinuch, Inc. ("Merkos"). The preliminary injunction enjoins Otsar from disseminating a new version of Siddur Tehillat Hashem, a prayerbook widely used within the Lubavitch movement of Hasidic Judaism, pending resolution of Merkos' claim that Otsar's new version of the prayerbook violates Merkos' copyright in the original Siddur Tehillat Hashem by copying verbatim Rabbi Nissen Mangel's English translation of the Hebrew prayers, which appears in Merkos' Siddur Tehillat Hashem.

■ We review a District Court's grant of a preliminary injunction for abuse of discretion. *Fifth Avenue Presbyterian Church v. City of New York*, 293 F.3d 570, 573 (2d Cir.2002) (citing *Latino Officers Ass'n v. City of New York*, 196 F.3d 458, 462 (2d Cir.1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1170, 145 L.Ed.2d 1079 (2000)). "A party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir.2002) (citing *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 172 (2d Cir.2001)). We have held that "generally when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed." *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir.1996); *see also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985) ("Irreparable harm may ordinarily be presumed from copyright infringement."). This case illustrates the rationale behind this presumption: Since Otsar sells essentially the same

product as Merkos to the same market, it will obviously suffer considerable loss if Otsar disseminates its prayerbook, because each sale of an Otsar prayerbook probably results in one less sale of the Merkos' prayerbook.[1] Merkos thus satisfies the "irreparable harm" prong of the preliminary injunction standard, and we turn to the "merits" prong.

■ "To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108–09 (2d Cir.2001). Otsar argues that Merkos fails to establish either of these elements.

The Copyright Act provides that "[c]opyright protection subsists ... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device," and that "[w]orks of authorship include ... (1) literary works." 17 U.S.C. § 102(a)(1); *see also Yurman Design*, 262 F.3d at 109 ("Under the Constitution and by statute, copyright validity depends upon originality."). Otsar challenges Merkos' claim of a copyright in the Mangel translation on two bases. First, it contends that the translation lacks the originality to be a copyrightable literary work. Second, it asserts that even if the translation is copyrightable, Merkos does not hold the copyright.

■ We reject Otsar's assertion that the translation is not copyrightable. We have explained that " '[o]riginality' in [the copy-

right] context 'means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.' " *Yurman Design*, 262 F.3d at 109 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). The translation process requires exercise of careful literary and scholarly judgment. As the District Court commented, "[t]he translation of prayers ... involves partly the precision of science but partly the sensitivity and spirit of art. Behind the words that are found in the Hebrew and the words that are used in the English are shades of meaning and subtlety that cannot be labeled functional." The fact that the Mangel translation is designed to serve a practical aim does not render it ineligible for copyright protection. *See Hart v. Dan Chase Taxidermy Supply Co.*, 86 F.3d 320, 321–22 (2d Cir. 1996) (fish mannequins are copyrightable because "many objects are both useful and works of artistic craftsmanship. Even useful articles ... can gain copyright protection for any physically or conceptually separable artistic features.") (internal quotations omitted). Thus, we agree with the District Court that the translation is copyrightable. *See Toksvig v. Bruce Publishing Co.*, 181 F.2d 664, 666 (7th Cir.1950) (copyright infringement occurred when a biographer of Hans Christian Anderson who was unfamiliar with Danish copied "original translations made by plaintiff [the author of an earlier work on Anderson] from Danish sources").

■ The question of whether Merkos holds the copyright in the Mangel transla-

---

1. As Merkos points out, the main purchasers of the prayerbooks are synagogues. The synagogues desire the prayerbooks for use during worship services, and thus (unlike, for example, a library) have no use for two separate prayerbooks. Indeed, a synagogue may de- sire uniform prayerbooks in order to be able to refer to aspects of the prayerbooks during services (i.e., announcing the page). Once a synagogue invests in Otsar's prayerbooks, it is unlikely to purchase Merkos' prayerbooks for years to come.

tion is closer than the issue of whether the work is copyrightable. Merkos argues that it holds a copyright because Rabbi Mangel produced the translation for Merkos as a "work-for-hire", thus entitling Merkos under 17 U.S.C. § 201(b) to the copyright. Central to resolution of the work-for-hire issue is whether the "work-for-hire" inquiry is governed by the Copyright Act of 1976 (the "1976 Act") or by the Copyright Act of 1909 (the "1909 Act"), a question which turns on whether the relevant contract was entered into prior to January 1, 1978. *See Roth v. Pritikin,* 710 F.2d 934, 937–40 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983). Under the 1976 Act, the absence of a written agreement between Merkos and Rabbi Mangel will require Merkos to satisfy the multifactored test of *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) for demonstrating that Rabbi Mangel prepared the translation "within the scope of his or her employment." See 17 U.S.C. § 101. Under the 1909 Act, Merkos would face the lower threshold of demonstrating that the work was prepared at its "instance and expense." *Roth,* 710 F.2d at 937 n. 3 (citing cases). Resolution of the question of which Act applies requires additional factual development and may implicate issues of law as well. Further, regardless of which Act governs, factual issues about the relationship between Rabbi Mangel and Merkos need to be resolved in order to determine whether Merkos can claim a "work-for-hire" copyright. We need not address the legal questions surrounding which Act should apply at this point, and instead prefer to allow the District Court to address these issues in the first instance after further factual development. We are satisfied that the record at this point contains sufficient evidence in Merkos' favor on the question of whether it holds the copyright not to call into question the District Court's issuance of the preliminary injunction. Thus, while additional factual development is required on both the issue of which Act applies and on whether (under the standard of whichever Act is determined to govern) the translation was prepared as a work-for-hire, and while these issues are (as the District Court noted) potentially close, we agree with the District Court that for purposes of the preliminary injunction inquiry, Merkos has made a sufficient *prima facie* showing that it owns the copyright to support the preliminary injunction. We intimate no view as to the result that should be reached at trial.

■ Otsar argues that even if Merkos holds a valid copyright, Otsar's prayerbook does not infringe such copyright. First, it argues that its prayerbook makes "fair use" of the Mangel translation, pointing out that its prayerbook adds user-friendly instructions to the translation and utilizes a different layout than does the original Siddur Tehillat Hashem. Second, it advances what is essentially an "idea-expression merger" argument, asserting that the "copyright law does not permit the monopolization of the recommended form of a religious prayer." The Copyright Act sets forth a four-factor test for assessment of a "fair use" claim: "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. On balance, these factors favor Merkos. In

particular, the third and fourth factors overwhelmingly favor Merkos, because Otsar has copied the entire Mangel translation and used it for a purpose identical to Merkos' use. *See Infinity Broadcast Corp. v. Kirkwood,* 150 F.3d 104, 109–10 (2d Cir.1998) ("Though not an absolute rule, generally, it may not constitute a fair use if the entire work is reproduced" and fourth factor "is concerned with secondary uses that, by offering a substitute for the original, usurp a market that properly belongs to the copyright-holder") (internal quotations omitted); *Weissmann v. Freeman,* 868 F.2d 1313, 1324 (2d Cir.1989) ("where, as here, [defendant's] use is for the same intrinsic purpose ·as [plaintiff's], such use seriously weakens a claimed fair use."). Accordingly, we do not think that Otsar's fair use defense offers a basis for doubting the likelihood of potential success on the merits for Merkos.

■ Finally, we reject Otsar's merger argument. We have explained that "[t]he fundamental copyright principle that only the expression of an idea and not the idea itself is protectable has produced a corollary maxim that even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *Kregos,* 937 F.2d at 705 (citing *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954)). Otsar argues that the Mangel translation presents a medium where the expression of an idea has effectively merged with the idea itself, because the Mangel translation, which was endorsed by the late Rabbi Menachem Mendel Schneerson (the "Rebbe"), the chief rabbi of the Lubavitch community from 1950 until his death in 1994, is the sole viable translation of the prayerbook within the Lubavitch community. This argument has some force but is ultimately unpersuasive. It is true that the Rebbe's endorsement of the Mangel translation. and the inclusion of the Mangel translation in all past editions of the Siddur Tehillat Hashem make it particularly attractive to Lubavitch Jews. However, it does not appear to be the case from the record that Lubavitch loyalists can only use a prayerbook utilizing the Mangel translation; Otsar itself explained that its decision to create its own prayerbook was based largely on the observation that many Lubavitch worshipers were using prayerbooks other than Siddur Tehillat Hashem because those other prayerbooks included more accessible directions. More fundamentally, as discussed above, the art of translation involves choices among many possible means of expressing ideas, and in that sense the merger argument is inapposite to the context presented here. Thus, we do not believe that the merger defense offers a basis for doubting the likelihood that Merkos will prevail in this litigation.

■ Finally, Otsar argues that the federal courts do not have jurisdiction to decide this dispute because adjudication of the dispute requires determinations of religious law and doctrine. Otsar's argument relies principally on a rabbinical court ruling that purportedly declared Rabbi Sholom Simpson (whose followers control Otsar) to be the Rebbe's successor and the individual who should control Merkos. Merkos does not accept the authority of this ruling and aligns itself with a faction of the Lubavitch community that believes that Rabbi Yehuda Krinsky is the Rebbe's successor. We reject Otsar's argument that we lack jurisdiction. Courts may decide disputes that implicate religious interests as long as they can do so based on "neutral principles" of secular law without undue entanglement in issues of religious doctrine. *See Jones v. Wolf,* 443 U.S. 595, 604, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979);

**100**

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 431 (2d Cir. 1999) ("The First Amendment does not prevent courts from deciding secular civil disputes involving religious institutions when and for the reason that they require reference to religious matters."). This case can clearly be decided under secular law principles. Merkos is a corporate entity, and it is controlled by a duly selected board. *See United Christian Scientists v. Christian Science Board of Directors, First Church of Christ, Scientist*, 829 F.2d 1152, 1159 (D.C.Cir.1987) ("Normally, a grant of a copyright on a religious work poses no constitutional difficulty. Religious works are eligible for protection under general copyright laws ...."); *see also* 1 MELVILLE B. NIMMER, NIMMER ON COPYRIGHT § 3.03(A), at 3–9 n. 6 (1978) (citing and discussing *United Christian Scientists v. Christian Science Board of Directors, First Church of Christ, Scientist*, 616 F.Supp. 476, 478 n. 5 (D.D.C. 1985)). Otsar's argument has some force insofar as community acceptance of the rabbinical court ruling would have changed the composition of this board and placed Merkos under the control of the Simpson faction. However, we cannot decline jurisdiction on this basis; to do so would permit any party to contend that religious doctrine that it deems authoritative undermines the authority of its adversary's position.

For the reasons stated above, we believe that Merkos has established a sufficient probability of success to warrant the permanent injunction granted by the District Court. There are "serious questions" going to the merits and the "balance of hardships" strongly favors Merkos. Accordingly, we do not believe the District Court abused its discretion in granting the preliminary injunction.

The judgment of the district court is AF-FIRMED.