**MYWEBGROCER, LLC, Plaintiff–Counter–Defendant–Appellant,**

v.

**HOMETOWN INFO, INC., d/b/a Grocery Shopping Network, and Andrew D. Robinson, Defendants–Third–Party–Plaintiffs–Appellees,**

**Richard E. Tarrant, Third–Party–Defendant.**

**Docket No. 03–7909.**

United States Court of Appeals, Second Circuit.

Argued: May 20, 2004.

Decided: July 13, 2004.

R. Bradford Fawley (Peter B. Kunin, on the brief), Downs Rachlin Martin PLLC, Brattleboro, Vermont, for Plaintiff–Counter–Defendant–Appellant.

Wayne G. Popham, Popham Law Office, Minneapolis, Minnesota (Steven Bredice, Unsworth, Powell, Barra, Orr & Bredice, PLC, Essex Junction, Vermont, on the brief), for Defendants–Third–Party–Plaintiffs–Appellees.

Before: WINTER, STRAUB, and LAY,[*] Circuit Judges.

WINTER, Circuit Judge.

MyWebGrocer, LLC ("MyWeb") appeals from Judge Sessions's denial of a preliminary injunction that would have barred HomeTown Info. and its CEO Andrew Robinson (collectively "HomeTown") from using grocery product descriptions for online shopping developed and copyrighted by MyWeb. The district court held that MyWeb was unlikely to prevail at trial on its claims because the product descriptions were not sufficiently creative to be copyrightable. We affirm but on somewhat different grounds.

## BACKGROUND

MyWeb and HomeTown are competitors in the business of developing and maintaining online grocery shopping systems for traditional grocery stores. Such businesses create descriptions of grocery products and then use them on their clients' websites. They create these product descriptions by collecting raw product information from various sources, including product packages. Each then selects the information that it deems important or useful to online shoppers and organizes and arranges that information so as to facilitate and encourage online shopping.

In February 2001, D'Agostino Supermarkets entered into a two year contract with MyWeb to create and maintain its online grocery store. D'Agostino had not previously had such a store. MyWeb populated the new website with approximately 18,000 product descriptions. These descriptions were created solely by MyWeb except for cases where MyWeb did not have preexisting product descriptions for particular items sold by D'Agostino. In those cases, the two jointly developed product descriptions.

At some point before March 26, 2003, D'Agostino told MyWeb that it would probably not renew its contract. On that

* The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

day, MyWeb applied for and received a Certificate of Registration from the U.S. Copyright Office for "MyWebGrocer Website—D'Agostino Segment." The copyright was for "new text; compilation and editorial revision" and had an effective date of March 27, 2003. MyWeb noted that the copyrighted material was derived in part from a 2000 copyright, the content of which does not appear in the record. According to MyWeb, the 2003 copyright protects, *inter alia*, about 18,000 product descriptions on the D'Agostino website.

On April 1, 2003, after negotiating a site development and hosting contract with D'Agostino, HomeTown activated a new D'Agostino website. The product descriptions used on MyWeb's D'Agostino site had been provided to HomeTown by D'Agostino and were used verbatim, except for capitalization, on the new website. HomeTown had previously become the provider for a former MyWeb client, and Hometown subsequently attempted to attract one or two of MyWeb's other clients using the new D'Agostino site as an example of HomeTown's capabilities.

MyWeb filed the present complaint against HomeTown on April 15, 2003, alleging copyright infringement, willful copyright infringement, false designation of origin, tortious interference with prospective business relations, a RICO claim, unfair competition, and trespass. HomeTown counterclaimed alleging unfair competition, defamation, tortious interference with contract and false designation of origin, and also sought a declaratory judgment that MyWeb's copyright was void. MyWeb moved for a preliminary injunction on May 7, 2003, asking the court to bar HomeTown's use of its product descriptions. The court held evidentiary hearings on the motion before denying it on the grounds that MyWeb was unlikely to prevail at trial on its claims of copyright protection for the product descriptions. In the district court's view, the product descriptions in issue were not sufficiently creative to be copyrighted because, although MyWeb's information gathering process was "painstaking," "MyWeb exercises virtually no discretion in choosing what facts to include in a product description, and the arrangement of those facts is largely dictated by the use to which the facts are put." *My WebGrocer, LLC v. Hometown Info.*, No. 2:03–CV–114, Memorandum and Order at 10 (D.Vt. Aug. 4, 2003). This appeal followed.

## DISCUSSION

A party seeking a preliminary injunction must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir.2002) (internal citation omitted). We review the denial of a preliminary injunction for abuse of discretion. *Id.*

MyWeb has satisfied the irreparable harm prong of the preliminary injunction test. It appears undisputed that the product descriptions written by MyWeb were copied by HomeTown. Furthermore, for reasons discussed *infra*, HomeTown has not met its burden of rebutting MyWeb's prima facie evidence of the validity of its copyright. *See* 17 U.S.C. § 410(c) (certificate of registration from United States Register of Copyrights is prima facie evidence of ownership of valid copyright); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir.1999) (alleged infringer bears the burden of rebutting presumption of copyright validity). Thus, MyWeb has

established a prima facie case of infringement, and "when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed." *Otsar Sifrei Lubavitch*, 312 F.3d at 96 (internal quotation marks omitted).

However, MyWeb has not satisfied the second prong of the preliminary injunction standard—a showing either of likelihood of success on the merits or of fair grounds for litigation and a balance of hardships tipping decidedly in its favor. *See id.* (applying preliminary injunction standard in copyright case).

■ A compilation of non-protectible facts is copyrightable if it "features an original selection or arrangement of facts," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), so that the selection or arrangement "possesses at least some minimal degree of creativity," *id.* at 345, 111 S.Ct. 1282. "Selection implies the exercise of judgment in choosing which facts from a given body of data to include in a compilation." *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 513 (2d Cir.1991). We recently held that "if the selection process imbues a compilation with the requisite creative spark, the compilation may be protected so long as there are indicia that principles of selection (other than all-inclusiveness) have been employed." *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 83 (2d Cir.2004) (compiler of Dorothy Parker's uncollected poems might be entitled to copyright if his selection process involved more than seeking all uncollected poems or if his selection of what constituted a poem and what did not was original).

■ At the evidentiary hearings, MyWeb introduced a selection of its own product descriptions and those of Home-Town and several other competitors, examples of which we set out in an appendix to this opinion. In describing Gerber baby food, for example, MyWeb included the whole name—"Gerber 1st Foods—Bananas." A competitor, in contrast, included as little as necessary to identify the item, brand, and sub-brand in its descriptions, writing only "Gerber 1st Bananas." HomeTown included only "GERB BANANAS," omitting the sub-brand. MyWeb included what is apparently an advertising slogan in a cracker description—"Golden & Flaky"—while HomeTown and others did not. MyWeb included the colors of baking cups in its description—"Pastels"—while HomeTown and others did not. MyWeb included "just add chicken or pork" in a frozen meal description—a phrase that is on the box but not in the item title—while HomeTown and others did not.

HomeTown is correct that the idea of using a manufacturer's factual identification of a grocery product is not a sufficient exercise of creativity and that the facts in a description of a product's brand, manufacturer, or name are not copyrightable. But some aspects of the MyWeb descriptions may involve original selection, and if so, they are protected at least from wholesale verbatim copying. The parties have not agreed that the record is complete with regard to creativity and perhaps other issues, that is to say, a full trial would involve more evidence. When the record is complete, a trier of fact might conclude that the various providers have different concepts of the most attractive and useful product description—brevity versus completeness, bare physical essentials versus essentials plus puffery, full product names versus abbreviations, for example. A trier might conclude that MyWeb made creative choices about what to include or exclude in its product descriptions—e.g. advertising slogans, sub-brands, product colors, and phrases from product packaging—for the

purpose of facilitating and encouraging on-line shopping. Indeed, HomeTown's pre-D'Agostino product descriptions were seemingly quite different from those used by MyWeb. *See* appendix 1, *supra.* My-Web may therefore have a narrow copy-right in its product descriptions that pro-tects them from wholesale copying.

However, it is not clear that MyWeb is likely to succeed on the merits, because a broader comparison of product descrip-tions by various companies may persuade a trier that few of MyWeb's descriptions include such creative elements, that the differences between various companies' de-scriptions are so slight in the aggregate as to be noncreative, or that MyWeb simply included all the packaging information that would reasonably fit. At this stage, there-fore, MyWeb's claim presents only a fair grounds for litigation.

█ If MyWeb's product descriptions are found to be sufficiently creative to be original, a challenge based on the merger or scenes a faire doctrines would likely be unsuccessful. The merger doctrine bars a copyright of even original expression "when there is essentially only one way to express an idea" and thus "the idea and its expression are inseparable." *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 707–08 (2d Cir.1992) (internal quotation marks omitted). The merger doctrine ren-ders some aspects of the product descrip-tions unprotectible—such as the decision to include information culled from product packaging in a product description. If such inclusion were protected, MyWeb could potentially own a copyright in the idea of online grocery shopping. However, as noted above, only very limited aspects of the arrangement and selection of infor-mation chosen by MyWeb may be found, after the introduction of further evidence, to be sufficiently original to be copyrighta-ble. This thin copyright, if warranted,

would not give MyWeb a copyright in the idea of online grocery stores, but only in its original selection and arrangement of descriptive information. Thus, the merger doctrine would not invalidate MyWeb's copyright in the original elements of its selection and arrangement.

█ Scenes a faire are unprotectible el-ements that follow naturally from a work's theme rather than from an author's crea-tivity. *See id.* at 715. For example, "[f]oot chases and the morale problems of policemen, not to mention the familiar fig-ure of the Irish cop, are venerable and often-recurring themes of police fiction. As such, they are not copyrightable except to the extent they are given unique—and therefore protectible—expression in an original creation." *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 50 (2d Cir.1986). In the present matter, the scenes a faire doctrine would render unprotectible only those elements of the product descriptions that are unprotectible for lack of originali-ty or due to the merger doctrine. For example, use of an item title or manufac-turer in a product description might be an unprotectible scene a faire, but these would already be unprotectible for lack of originality or because protecting them would result in a copyright over an idea. Selection or arrangement choices, howev-er, if found sufficiently creative to be origi-nal, would not be scenes a faire.

Therefore, because MyWeb has shown only fair grounds for litigation, it is not entitled to a preliminary injunction unless the balance of the hardships tips decidedly in its favor. However, the balance of hardships is, viewing the facts in the light most favorable to MyWeb, equal. *Video Trip Corp. v. Lightning Video Inc.,* 866 F.2d 50, 52 (2d Cir.1989) (affirming denial of a preliminary injunction in copyright case where there existed irreparable harm but party was unlikely to succeed on mer-

its and balance of hardship was even). Both MyWeb and Hometown would suffer determinable monetary damages should they not prevail on the injunction issue. However, if a preliminary injunction were issued, D'Agostino would be forced to shut down its online grocery store, at least temporarily, perhaps permanently losing customers.

We have considered MyWeb's remaining arguments and find them to be without merit. We therefore affirm.

## APPENDIX

The following are examples of product descriptions used by HomeTown, MyWeb, and various similar firms. The numbers used refer to particular firms' descriptions as follows:

1) HomeTown before its D'Agostino site;

2) MyWeb's D'Agostino site;

3) HomeTown's D'Agostino site;

4) Safeway's site;

5) PeaPod's Stop & Shop site;

6) Albertson's site; and

7) Kroger's HomeShop site.

1) FRUIT BY FOOT STRAWBERRY (4.5 oz)

2) Betty Crocker Fruit by the Foot Fruit Snacks Strawberry 6—0 .75 oz Rolls 4.5 oz

3) BETTY CROCKER fruit by the foot fruit snacks strawberry 6—0 .75 oz rolls (4.5 oz)

4) Betty Crocker Fruit Roll Ups Strawberry Fruit By Foot—4.5 Oz

5) Fruit By the Foot Strawberry

6) Betty Crocker Fruit by the Foot Strawberry

\*   \*   \*   \*   \*   \*

1) GERB BANANAS

2) Gerber 1st Foods—Bananas 2.5 oz

3) GERBER 1st foods—bananas (21/2 oz)

4) Gerber First Foods Bananas—2.5 Oz

5) Gerber 1st Bananas 2.5 OZ JAR

\*   \*   \*   \*   \*   \*

1) HH SHERRY COOKING WINE (16OZ)

2) Holland House Cooking Wine Sherry Cooking Wine Sherry 16 oz

3) HOLLAND HOUSE cooking wine sherry cooking wine sherry (1 fl oz) [sic]

5) Holland House Sherry Cooking Wine

7) Holland House/Wine Vinegar For Cooking—Sherry (16 Ounce)

\*   \*   \*   \*   \*   \*

1) CARR'S   CARR'S   CROISSANT CRACKER

2) Carr's Croissant Crackers Golden & Flaky 5.29 oz

3) CARRS croissant crackers golden & flaky (5.29 oz)

4) Carrs Ent Croissant Cracker—5.29 Oz

7) Carrs/Snack   Crackers—Croissant Original (5.29 Ounce)

\*   \*   \*   \*   \*   \*

1) REYNOLDS PAPER BAKE CUPS (50 CT.)

2) Reynolds Baking Cups—Pastels 2½ Inch 50 ct

3) REYNOLDS baking cups—pastels 2½ inch (50 100 ct)

4) Reynolds Baking Cups Paper—50 Count

5) Reynolds Baking Cups Paper

7) Reynolds/Baking Cups—Paper Large (50 Count)

\*   \*   \*   \*   \*   \*

1) GGCAM LOMN GREEN GIANT CREATE A MEAL LO MEIN AS-

SORTED MIXED VEGETABLE 21 OZ

2) Green Giant Create A Meal—Lo Mein Stir Fry Just Add Chicken or Pork 21 oz

3) GREEN GIANT create a meal—lo mein stir fry just add chicken or pork (21 oz)

5) Green Giant Create Meal LoMein Stirfry 21 OZ BAG