**MERIT DIAMOND CORPORATION, Plaintiff,**

v.

**FREDERICK GOLDMAN, INC., BJ's Wholesale Club, Inc. and Kohl's Corporation, Defendants.**

**No. 05 Civ. 5164(VM).**

United States District Court, S.D. New York.

July 13, 2005.

---

David J. Molton, Brown Rudnick Ber-
lack Israels LLP, New York City, for
plaintiff.

Ira Stephen Sacks, Michael Douglas
Pantalony, New York City, for defendants.

### DECISION AND ORDER

MARRERO, Judge.

Plaintiff Merit Diamond Corporation
("Merit") alleges that Frederick Goldman,
Inc. ("Goldman"), a jewelry manufacturer,
as well as two retailers of products manu-
factured by Goldman, BJ's Wholesale Club
("BJ's") and Kohl's Corporation ("Kohl's")
(collectively, "Defendants"), infringed Mer-
it's copyright for a three-stone pendant
design (the "Three Stones pendant").
Merit claims that two different pendants
produced by Goldman, one sold by Kohl's
(the "Kohl's pendant") and another sold by
BJ's (the "BJ's pendant"), impermissibly
mimic its copyrighted design.

Merit has moved for a preliminary in-
junction prohibiting Defendants from man-
ufacturing or selling these allegedly in-
fringing products, an order of recall of
existing inventory, and an order of seizure
requiring Goldman to surrender molds and
devices used to manufacture the offending
goods. The Court held a hearing on Mer-
it's motion on July 7, 2005, at which Abra-
ham "Gagi" Kaplan ("Kaplan"), Merit's
Chief Executive Officer and designer of
the Three Stones pendant, testified.

Because Merit appears likely to demon-
strate that Goldman's products infringe its
copyright, the Court grants a preliminary
injunction prohibiting Defendants from
manufacturing, distributing, or selling the
allegedly infringing products. It also de-
termines that an order of recall would be
equitable in this case, due to the approxi-
mately 1000 stores nationwide that would
be in a position to continue selling the
challenged items absent the recall order.
By reason of the expense associated with a
recall, however, Merit will be required to
post a substantial bond to cover the cost of
a recall in the event that it does not suc-
ceed on the merits. Merit has not ex-
plained why an order of seizure would be
necessary to protect its rights, however;
consequently, the Court declines to order
this intrusive remedy at this stage of the
proceedings.

### I. BACKGROUND

#### A. FACTS

Merit designs, manufactures, and sells
diamond and gemstone jewelry products,
including, but not limited to, pendants and
pendant necklaces set with diamonds. It
owns United States Copyright Registra-
tion Number VA1208635 for the Three
Stones pendant. The Three Stones pen-
dant has six features that Merit alleges
make it original and worthy of copyright
protection: (1) three round, brilliant cut
single diamonds; (2) a precious metal "he-
lix" of three clockwise turns;[1] (3) mount-

1. Goldman alleges that the configuration of      the precious metal used on the pendant is

ing of the diamonds between the turns of the "helix"; (4) tapered top and end portions of the "helix"; (5) polished inner and outer surfaces of the precious metal "helix"; and (6) the polishing of the inner surface to create a mirrored effect of the diamonds in their settings. (Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction, Pursuant to Federal Rule of Civil Procedure 65(a) and 17 U.S.C. § 502, and an Order of Seizure of Any Manufacturing Molds and Devices and Recall of Infringing Items, Pursuant to 17 U.S.C. § 503, dated June 16, 2005 ("Merit Mem.") at 2.) Merit alleges that it has sold this product through several retail jewelry outlets such as Zales, J.C. Penney, and others, and that it has exhibited the pendant through trade shows, vendor catalogs, and other vehicles, since January 2003, at the latest.

Merit's Complaint alleges that Defendants have been manufacturing or selling the infringing pendants since at least January 2005. In their opposition papers, Defendants assert that the process of designing the competing pendants began in February 2004, shortly after the Three Stones pendant entered the market.[2] According to Stephanie Occhipinti ("Occhipinti"), designer of the allegedly infringing pendants, she developed the design after Goldman's director of merchandising, Meryl Besen ("Besen") requested that she create a three-stone pendant due to the alleged popularity of this design in the retail trade. (Declaration of Stephanie Occhipinti, dated June 25, 2005 ("Occhipinti Decl."), ¶ 11.) Occhipinti states that she began the design process by first "review[ing] numerous catalogues and other sources to see what was out in the marketplace in terms of style, price point, and stone weight, etc." (Id.) She insists, however, that she *did not copy or 'knock off' the Merit three-stone pendant in designing the Goldman three-stone pendant."* (Id.) Besen states that she does not recall whether she was aware of Merit's Three Stones pendant at the time she asked Occhipinti to design a new pendant, but insists that she "would never direct or request Ms. Occhipinti or any designer to 'knock-off' or copy any design, nor would I ever expect Ms. Occhipinti, who is highly regarded as a designer in the industry, to ever 'knock-off' any design." (Declaration of Meryl Besen, dated June 26, 2005 ("Besen Decl.") ¶ 17.) Rather, both Occhipinti and Besen insist that the Goldman pendant design was based on designs of rings

---

properly termed an "S-curve" rather than a "helix". The terminology used to describe the pendant is not relevant to the disposition of Merit's motion, however; consequently, the Court will refer to these terms interchangeably.

2. Even though the Kohl's pendant and the BJ's pendant have somewhat different appearances, Goldman's submissions refer only to a single design and a single designer. While the precious metal S-curves on the Kohl's pendant run counterclockwise, the S-curves on the BJ's pendant run clockwise. There also appear to be minimal differences between the top and end portions of the two pendants. (See Declaration of Abraham "Gagi" Kaplan, dated June 10, 2005 ("Kaplan Decl.") Ex. B (photograph comparing pen-

dants).) But Defendants' opposition brief contains a photograph only of a pendant with counterclockwise S-curves, and refers only to a single pendant design. See Defendants' Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction and Order of Seizure and Recall ("Defendants' Mem.") at 5–6 (referring to the "Goldman three-stone pendant" design and displaying a photograph of a pendant with counterclockwise S-curves.) Goldman's discussion of the design in its papers, as well as its admission that it is responsible for both of the pendants, lead the Court to conclude for the purposes of the instant motion that the Kohl's and BJ's pendants represent minor variations of a single pendant design, which it will refer to as the "Goldman pendant design" or the "Goldman pendant".

previously produced by Goldman. (*Id.* ¶ 16; Occhipinti Decl. ¶¶ 12–13.) [3]

An initial comparison of the two designs reveals that the Goldman pendant, in both Kohl's and BJ's variations, appears similar to the Three Stones pendant. All three are of essentially identical size.[4] Each combines three round, brilliant single cut diamonds, a precious metal "helix" or S-curve of three turns, and tapered top and bottom portions, and the inner and outer surfaces of the "helix" are polished in a manner that creates a mirrored effect of the diamond in its setting.

Defendants contend that there are several important differences between the designs of the Three Stones pendant and the Goldman pendant. Occhipinti asserts that "[f]rom a jewelry design standpoint, [the Three Stones pendant] is a totally different piece from the Goldman three-stone pendant." (Occhipinti Decl. ¶ 14.) Occhipinti claims that the Goldman pendant design has a more rounded style than the Three Stones pendant; the bales of the two pendants have different orientations and appearances;[5] and the Goldman pendant design "has a more linear look to it" than that of the Three Stones pendant. (*Id.*) Besen also claims that the stones in the Three Stones pendant and the Goldman pendant are set through different techniques: while the stones in the Three Stones pendant are "channel set," which is accomplished by hammering the precious metal on top of the stone to secure it, the stones in the Goldman pendant are "nick set," which is accomplished by "carving out a piece of precious metal and fitting the diamond into the rut that has been carved out." (Besen Decl. ¶ 9.)[6]

## B. PROCEEDINGS

Merit states that it was first told on January 30 or February 1, 2005 that Kohl's or BJ's was selling knockoffs of the Three Stones pendant. It claims that it did not locate and purchase a copy of the allegedly infringing product from Kohl's until on or about March 3, 2005, and did not establish the breadth of the distribution of the pendants until mid-May of 2005.

3. Merit disputes that Occhipinti or others at Goldman could not have been aware of the Three Stones pendant at the time the Kohl's pendant was allegedly designed. Sima Lambert, Merit's Vice President of Purchasing and Product Development, has submitted a reply declaration indicating that the Three Stones pendant was pictured and sold through several catalogs at the time Occhipinti alleges that she perused through catalogs to get ideas for her design. (*See* Reply Declaration of Sima Lambert, dated June 30, 2005 ("Lambert Reply Decl.") ¶¶ 7–15.)

Furthermore, Kaplan asserts in a reply declaration that Goldman's CEO, Jonathan Goldman, was aware of the jewelry line that included the Three Stones pendant, as well as its popularity, when he met with Jonathan Goldman at a gathering of jewelry suppliers in Dallas on or about June 30, 2004. (Reply Declaration of Abraham Kaplan, dated June 25, 2005 ("Kaplan Reply Decl.") ¶¶ 3–4.) It is not clear from the papers, however, whether Merit seeks to demonstrate that the alleged infringing design can be traced to Jonathan Goldman.

4. The Three Stones pendant is available in several sizes, but at least one of the sizes appears essentially identical to the sizes of the Kohl's and BJ's pendants purchased by Merit.

5. The bale is the top portion of a pendant that attaches the pendant to the chain. (*See* Occhipinti Decl. ¶ 13.)

6. Also, as noted above, while the precious metal S-curves run clockwise on the Three Stones pendant and the BJ's pendant, they run counterclockwise on the Kohl's pendant. This distinction was not, however, noted by Defendants or their declarants. It is also not clear from the present record whether all of the challenged pendants sold by BJ's and Kohl's, respectively, so differed, or whether both stores sold *both* variants of the Goldman pendant design and the samples identified by Merit for the purposes of the instant proceedings were randomly chosen.

At that point, Merit contacted counsel, which mailed "cease and desist" letters to all three Defendants on May 27, 2005.[7] It then commenced suit against Defendants on May 31, 2005, and filed the instant motion on June 16, 2005 "[w]hen defendants did not stop infringing after these actions." (Plaintiff's Reply Memorandum of Law in Further Support of its Motion for a Preliminary Injunction, Order of Seizure, and Order of Recall ("Merit Reply Mem.") at 6–7.)

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir.2004) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir.2002)).[8] The Court first analyzes Merit's likelihood of success on the merits of its copyright infringement claim. Finding that Merit has met its burden at this stage of the proceedings, it also concludes that Defendants have failed to rebut the presumption that Merit will be irreparably harmed if a preliminary injunction does not issue.

### B. LIKELIHOOD OF SUCCESS

To succeed on the merits of its copyright infringement claim, Merit must establish: (1) ownership in a valid copyright; and (2) that Defendants have engaged in unauthorized copying of the protected work. *See, e.g., Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).

#### 1. Validity of Merit's Copyright

■ The issuance of a certificate of registration for a copyright is *prima facie* evidence of the validity of the copyright. *See id.* (citing 17 U.S.C. § 410(c)). Merit possesses a copyright registration for the Three Stones pendant, and is thus entitled to the presumption that its copyright is valid.

Defendants seek to rebut this presumption by demonstrating that Merit's design lacks the originality necessary for it to be entitled to copyright protection under the Constitution and the copyright laws. *See, e.g., Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–47, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (discussing the originality requirement). According to Defendants, the Three Stones pendant is not sufficiently original to merit copyright protection because the allegedly distinctive elements of the pendant "are common ele-

---

7. Merit asserts that Goldman refused shipment of the cease and desist letter, and attaches a Federal Express receipt to its moving papers lending support to this contention.

8. Defendants allege that the more stringent "substantial likelihood of success" standard applicable to preliminary injunction motions that award substantially all of the relief sought by plaintiffs, *see Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988), or that are mandatory rather than prohibitory, *see Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 35 (2d Cir.1995), also ought to apply to Merit's motion. But neither of these circumstances appears to be present in this case. Merit will not ultimately obtain the relief it seeks if a preliminary injunction is vacated after trial, enabling Defendants to restock their shelves with, and to sell, the allegedly infringing products. Moreover, the injunctive relief sought by Merit is prohibitory, preventing manufacture, distribution, or sale of the allegedly infringing products, even if Defendants will be required to take affirmative steps to ensure compliance with the terms of the injunction.

ments popular in the jewelry business, and have been widely available in the marketplace prior to 2003. Moreover, the combination of elements chosen by Merit for its alleged design is not original or novel." (Defendants' Mem. at 11.) Defendants have introduced several excerpts of jewelry catalogs printed before the alleged creation date of the Three Stones pendant claiming to show that the Three Stones pendant's distinctive elements were in fact used by prior jewelry designers.

Merit does not dispute that individual elements of the Three Stones pendant have appeared in prior jewelry designs. Rather, it asserts that it is entitled to copyright protection for the unique and artistic combination of elements achieved by the design. Merit relies on a recent Second Circuit opinion in support of its argument. That case, *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 109 (2d Cir. 2001), held that a jewelry design integrating unoriginal design elements in an original manner was entitled to copyright protection:

> Copyright law may protect a combination of elements that are unoriginal in themselves. With respect to compilations of facts, for example, protection extends to choices of "selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity." *Feist Publications*, 499 U.S. at 348, 111 S.Ct. 1282. These same principles apply to "derivative work[s]," which are "based upon one or more preexisting works." 17 U.S.C. § 101. Jewelry designs have been viewed as fitting within this latter category.

*Id.* Merit asserts that, even if each of the individual elements of the Three Stones pendant's design were contained in earlier jewelry designs, no design pictured in Defendants' opposition papers "recast and arranged those constituent elements" in the original manner of the Three Stones pendant. *Id.* Merit also notes that Goldman itself claims copyright protection for its pendant design, which Occhipinti asserts was created by merely rearranging prior ring and other jewelry designs in a new manner. (*See* Merit Reply Mem. at 3.)

Merit has the better of this argument. The registered copyright that Merit holds in the Three Stones pendant is entitled to the presumption of validity. The Court is not persuaded that any of the prior art shown by Defendants in their moving papers rebuts this presumption, as none of it anticipates the unique combination of elements contained in the design for the Three Stones pendant. Consequently, the Court concludes that Merit is likely to prevail on this element of its copyright claim.

### 2. *Infringement*

As stated by the Second Circuit, to establish infringement, "the copyright owner must demonstrate that '(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" *Yurman Design*, 262 F.3d at 110 (quoting *Hamil America, Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir.1999)) (emphasis in original).

Copying may be proven by direct evidence or by showing that Defendants had access to Merit's work, and that similarities exist between the Three Stones pendant and the allegedly infringing works that are probative of copying, *i.e.* that there is a "probative similarity" between the two works. *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir.1994).

Merit has introduced no direct evidence that Goldman copied its design. Rather, it seeks to prove copying by demonstrating

Goldman's access to the work and probative similarity between the Three Stones pendant and the challenged products. Probative similarity analysis requires consideration of "the entire work, not just the protectible elements." *Id.; see also Benham Jewelry Corp. v. Aron Basha Corp.*, 97 Civ. 3841, 1997 WL 639037, at *12 (S.D.N.Y. Oct. 14, 1997). " 'Probative similarity' is a less demanding test than 'substantial similarity,' requiring only that the two works would not be expected to arise if the works had been independently created." *Nicholls v. Tufenkian/Export Ventures, Inc.*, 367 F.Supp.2d 514, 521 (S.D.N.Y.2005) (quoting *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F.Supp. 1328, 1337 (S.D.N.Y.1997)).

Defendants effectively do not dispute that Goldman had access to the Three Stones pendant at the time that Occhipinti created the Goldman pendant design. Merit has introduced evidence that images and samples of the Three Stones pendant were widely available through catalogs, flyers, and tradeshows at the time the Goldman pendant was designed. (*See, e.g.,* Lambert Reply Decl. ¶¶ 7–15.) Occhipinti herself admits that she "reviewed numerous catalogs and other sources" to obtain ideas for her work. (Occhipinti Decl. ¶ 11.) Defendants do, however, contest that there is a probative similarity between the Three Stones pendant and the Goldman pendant. Moreover, they assert that they have rebutted any presumption of copying that may arise from a finding of probative similarity by introducing evidence of Occhipinti's independent creation of the Goldman pendant design. (*See* Defendants' Mem. at 14–15.)

The Court concludes that Merit is likely to prove probative similarity between the Three Stones pendant and the Goldman pendant. A comparison of the works provides probative evidence that the Goldman pendant would "not be expected to arise" if it had been created completely independently of the Three Stones pendant. Each of the works has three diamonds aligned vertically and spaced similarly. In each work, the diamonds are surrounded by "helix"- or S-shaped curves made of polished precious metal. In each work, precious metal extends outward from the top and bottom of the piece at an angle and tapers off into a curved, pointed end. While Defendants are correct that there are some differences between the designs, including the linearity of the pieces' appearances, a slight difference in the size of the two designs, and in the case of the variant of the design embodied by the Kohl's pendant, a different orientation of the pendant's precious metal S-curves, the overall appearances of the designs are probatively similar.

Nonetheless, Defendants may "come forward with credible evidence of independent creation to negative the inference of copying." *Benham*, 1997 WL 639037, at *13 (quoting *Arrow Novelty Company Inc. v. ENCO National Corp.*, 393 F.Supp. 157, 160 (S.D.N.Y.1974)). Conceivably, Occhipinti's insistence that she did not copy the Three Stones pendant when designing the Goldman pendant may ultimately persuade a factfinder. However, that is a factual finding that rests substantially on a determination of credibility, a matter more appropriate for a trial on the merits. At this stage of the litigation, the Court finds that Occhipinti's insistence that she based the Goldman pendant entirely on a prior Goldman ring design, which bears few close similarities to the Goldman pendant (*see* Defendants' Mem. at 5), and did not copy the Three Stones pendant's design, which is likely to have been seen by her during her design research and which bears an extremely close resemblance to the Goldman pendant, is not sufficient to "negative the inference of copying." *Id.* Consequently, Merit is likely to succeed in dem-

onstrating that Defendants' pendants were copied from the Three Stones pendant.

Merit must also prove that the Goldman pendant, in both of its variants, is an illegal copy by demonstrating that it is "substantially similar" to the Three Stones pendant. In order to succeed on this element of its claim, Merit "must show that the defendant[s] appropriated [its] particular means of expressing an idea, not merely that [they] expressed the same idea." *Fisher–Price*, 25 F.3d at 123. As *Benham* explains, in most cases the test for substantial similarity is the "ordinary observer test," which asks whether an ordinary lay observer "would recognize the alleged copy as having been appropriated from the copyrighted work." *Benham*, 1997 WL 639037, at *16 (citing *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995)). However, where, "as here, the works contain both protected and unprotected elements, the Second Circuit applies the 'discerning ordinary observer' test, which examines similarity between the protectible elements of the plaintiff's work and the copy." *Id.* The Second Circuit has noted, however, that even under this more stringent test, a court should compare "the works' 'total concept and feel,' " *Knitwaves*, 71 F.3d at 1003, an assessment which "should be instructed by common sense." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 273 (2d Cir.2001).

The Court concludes that Merit is likely to prove substantial similarity in this case, even under the more stringent "discerning ordinary observer" test. A comparison of the works' "total concept and feel," even one that disregards similarities between unprotectible elements of the Three Stones pendant such as its use of a three-stone arrangement, supports the same conclusion reached by the Court's probative similarity analysis. Both Merit's and Goldman's pendant designs share several distinctive features, including their use of similarly-shaped and similarly-polished precious metal S-curves; their identical placement and cut of the three diamond stones used in the designs; their similar tapering of the bales and end portions of the precious metal S-curves; and their similar sizing.

While it is true that the Goldman pendant design has a slightly more rounded and linear look than Merit's design for the Three Stones pendant, this difference does not in itself overcome the more visually dominant similarities between the designs' "total concept and feel." Neither does the different orientations of the bales of the two designs, which extend upward from the S-curves by essentially identical amounts. The orientation of the Three Stones pendant's precious metal S-curves is opposite from that of the Kohl's pendant, though not from that of the BJ's pendant, but a designer cannot avoid copyright liability merely by creating a mirror image of a protected work; Goldman itself does not point to this difference as a material point to the Court's comparison of the Goldman and Merit pendant designs.

The Court concludes on this basis that Merit is likely to prove at trial that the two designs are substantially similar, and that Merit is likely to succeed on the merits of its copyright claim.

## C.  *IRREPARABLE HARM*

■ Irreparable harm is presumed where a plaintiff makes out a *prima facie* case of copyright infringement. *See Fisher–Price*, 25 F.3d at 123. Merit has offered testimony to support this proposition, indicating that the appearance in the market of "knockoff" products such as the ones allegedly produced and sold by Merit are "causing reduction of sales and lost profits, damage to the recognition of the Merit Sirena® brand, which includes the Merit Three Stones pendant as part of

the Merit Sirena® collection, and loss of artistic reputation." (Kaplan Decl. ¶ 19.) According to Kaplan, Merit risks losing business during a critical period if it does not obtain injunctive relief now, while wholesalers are purchasing jewelry for the holiday season, which makes up over 70 percent of its annual sales. (*See* Kaplan Reply Decl. ¶ 17.)

Defendants nonetheless contest that Merit would be irreparably harmed absent injunctive relief, contending that Merit's delay in moving for injunctive relief after discovering the allegedly infringing products undercuts its claim of irreparable harm. (*See* Defendants' Mem. at 19) (quoting *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985) (holding that where a plaintiff delays seeking enforcement of its intellectual property rights, that delay will "indicate an absence of the kind of harm required to support a preliminary injunction").) Defendants assert that Merit admits to discovering the Goldman pendant by January 2005, but did not seek to enforce its rights with respect to the pendant until May 31 or June 1, 2005, a five-month delay.

This argument is without foundation in the record currently before the Court. The Second Circuit concluded in *Fisher–Price* that a copyright holder's six-month good-faith investigation of infringing activities did not defeat the presumption of irreparable harm associated with a finding of likelihood of success on the copyright holder's infringement claim. *See Fisher–Price,* 25 F.3d at 125. While Merit admits to learning of the existence of allegedly infringing products by as early as January 2005, it claims it did not locate and purchase an allegedly infringing pendant from Kohl's until March, and from BJ's until May. During the approximately three-month period between discovery of the allegedly infringing products and the filing of suit, Merit asserts that it was investigat-

ing the extent of infringing activity. Thus, unless Merit's assertions are proven false at trial, its delay in filing suit should not be sufficient to defeat the presumption of irreparable harm.

## D. REMEDIES

Based on the above analysis, Merit is entitled to a preliminary injunction prohibiting Defendants from manufacturing, distributing, displaying, advertising, or selling the variants of the Goldman pendant at issue in this case.

▮ The standard applicable to the recall sought by Merit is somewhat different. As the Second Circuit has explained, "[t]he imposition of a recall requirement is well within the district court's broad powers as a court of equity." *Perfect Fit Indus., Inc. v. Acme Quilting Co. Inc.,* 646 F.2d 800, 805 (2d Cir.1981). However, to determine whether that power should be exercised, a court "must consider the likely burden and expense of a recall to the defendant, and balance that burden against the benefit that would accrue to the plaintiff." *Benham,* 1997 WL 639037, at *19 (citing *Perfect Fit,* 646 F.2d at 807).

▮ In this case, Merit argues that absent a recall, Kohl's and BJ's will continue to sell the allegedly infringing pendants through hundreds of retail outlets, thus compounding the injury it has already suffered as a result of Defendants' infringing acts. Defendants reply that it would be unfair to impose the significant costs associated with a recall on Kohl's and BJ's, which are not alleged to have participated in the creation of the pendants, or to have even had knowledge that any intellectual property issues may have existed with respect to the pendants. (*See* Declaration of Laura Maaske, dated June 24, 2005; Declaration of Edward A. Beevers, dated June 27, 2005.) Moreover, Defendants assert that forcing BJ's and Kohl's outlets to

recall the allegedly infringing items "would be highly detrimental to the public image and goodwill of each store." (Defendants' Mem. at 21.)

Despite these arguments, Merit has established its entitlement to a recall from BJ's and Kohl's retail outlets, as well as from Goldman's other wholesale customers, to the extent they exist. Defendants appear to admit that they view a recall order as necessary to force "BJ's and Kohl's to withdraw merchandise from store shelves." (*Id.*) But if the allegedly infringing items are not withdrawn from store shelves in each of hundreds of BJ's and Kohl's large retail outlets, the beneficial effect of the preliminary injunction will be greatly diminished, if not completely vitiated. It would be unrealistic to expect that individual store employees in hundreds of stores located throughout the country could obey an injunction pertaining to a single piece of jewelry unless the items were completely removed from store shelves. Moreover, Defendants have not explained how the removal of a single item from a jewelry counter that is itself one element of BJ's and Kohl's large retail stores would be very harmful to "the public image and goodwill of each store." Even if individual customers who had previously learned of the pendants and planned to purchase them are disappointed to learn that the item is no longer in stock, it is not clear why this occurrence would cause any harm to the store's accumulated goodwill or public image. Requiring Goldman to contact other wholesale customers who have purchased the pendants for resale may be more harmful to its accumulated goodwill, but is similarly necessary to prevent the allegedly infringing products from making their way onto store shelves.

While the cost of administering a recall may be significant, the task should not be overly burdensome for Defendants. BJ's and Kohl's are large corporate entities that are capable of managing the process of recalling products from store shelves, just as they were capable of managing the distribution the products to hundreds of stores throughout the country in the first instance. Goldman itself may readily accomplish a recall by contacting wholesale customers other than Kohl's and BJ's who have purchased the pendants and offering to pay the cost of returns. Any material cost implications may be dealt with by requiring Merit to post a substantial bond that would compensate Defendants for the cost of administering a recall in the event that Merit does not prevail on the merits of its copyright claims.

■ Merit has not, however, demonstrated any basis for the more intrusive seizure order that it seeks. Seizure and impoundment have described by the Second Circuit as "drastic acts." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir.1989). Seizure of Goldman's manufacturing devices may inhibit its ability to produce legitimate non-infringing products, as well as the allegedly infringing pendants at issue in this case. Defendants have complied with all court orders to date, and Goldman has given no indication that it would flout an injunction prohibiting it from manufacturing the pendants absent a seizure order. Consequently, the Court declines to exercise its discretionary authority under 17 U.S.C. § 503 to order seizure of Goldman's manufacturing molds and devices at this stage of the proceedings.

### III. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that, pursuant to Fed. R.Civ.P. 65(a), Defendants Frederick Goldman, Inc. ("Goldman"), BJ's Wholesale Club, Inc. ("BJ's") and Kohl's Corporation ("Kohl's") (collectively, "Defendants") are

enjoined from manufacturing, distributing, displaying, advertising, or selling pendants based on the Goldman pendant design at issue in this case during the pendency of this action; and it is further

ORDERED that BJ's and Kohl's are ordered to recall their existing stock of pendants based on the Goldman pendant design from all retail locations, and that Goldman is ordered to recall all pendants based on the Goldman pendant design from all wholesale customers; and it is further

ORDERED that, pursuant to Fed. R.Civ.P. 65(c), plaintiff Merit Diamond Corporation ("Merit") shall issue a bond in the amount of $50,000 by no later than Monday, July 18, at 5:00 p.m. for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The parties are directed to appear before the Court on Thursday, July 21, at 2:00 p.m. to set a schedule for discovery and remaining pretrial proceedings in this action.

SO ORDERED.